**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-354 (APM)** |
| **v.** | : | |
| | : | |
| **THOMAS B. ADAMS,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION FOR RELEASE PENDING APPEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Thomas B. Adams' motion for release pending appeal. ECF 82. On January 30, 2023, following a stipulated bench trial, this Court convicted Adams of Count One, Obstruction of an Official Proceeding, in violation of 18 U.S.C § 1512(c)(2), and Count Two, Entering and Remaining on Restricted Grounds, in violation of 18 U.S.C § 1752(a)(1). On June 16, 2023, this Court sentenced Adams to 14 months of incarceration and 36 months of supervised release on Count One, and 12 months of incarceration and 12 months of supervised release on Count Two. The terms of incarceration and supervised release are to run concurrently. Adams filed a notice of appeal on June 22, 2023. ECF 71. He began serving his sentence on August 5, 2023.

For the reasons set forth below, including Adams' failure to show that his appeal "raises a substantial question of law or fact likely to result in" reversal or a reduced sentence, Adams' motion for release pending appeal should be denied. 18 U.S.C. § 3143(b)(1). Critically, even if this Court were to assume that Adams would succeed on the grounds that he plans to raise on appeal, Adams has not shown that his convictions on *both* counts would likely be reversed or that the sentences on both counts are likely to result in a reduced sentence less than the expected

1

duration of the appeal process. Accordingly, for this reason and the reasons discussed further below, Adams' motion for release pending appeal is without merit and should be denied.

## I.    LEGAL STANDARD

Once a defendant has been convicted and sentenced, he has no presumptive right to remain free on bail. Indeed, the Bail Reform Act of 1984 "creates a presumption against release pending appeal." *United States v. Chilingirian.* 280 F.3d 704, 709 (6th Cir. 2002). By statute, the defendant "shall . . . be detained" unless the court makes a series of findings in his favor:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds-
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c); and
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> > > (i) reversal,
> > > (ii) an order for a new trial,
> > > (iii) a sentence that does not include a term of imprisonment, or
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
> > If the judicial officer makes such findings, such judicial officer shall order the release of the person[ . ]"

18 U.S.C. § 3143(b)(1). The defendant bears the burden of satisfying these statutory elements. *See Morison v. United States*, 486 U.S. 1306, 1306–07, 108 S.Ct. 1837, 100 L.Ed.2d 594 (1988).

The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count. *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied). If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected

duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). It is the defendant's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

## II.    ARGUMENT

Adams has not met his burden with respect the statutory requirements for release pending appeal; therefore, his motion should be denied. Although this Court has previously found that Adams is not a flight or safety risk, *see* Tr. 6/16/23 at 78,[1] Adams has failed to establish that the issues he plans to raise on appeal articulate a substantial question that is likely to result in a reversal, a new trial, or a reduced sentence that is less than the expected duration of the appeal process.

Adams represents that he will raise a claim on appeal that 18 U.S.C § 1512(c)(2) is not applicable to his conduct on January 6, 2021. As this Court is aware, the Supreme Court granted certiorari in *Fischer v. United States*, No. 23-5572 (December 13, 2023). But the fact that the Supreme Court granted certiorari in *Fischer* does not establish that Adams' Section 1512(c)(2) conviction will be dismissed or even altered. At this time, a panel of the D.C. Circuit and every district court judge but one has agreed with the Government's interpretation of that statute. *See United States v. Fischer*, 64 F.4th 329, 338 (D.C. Cir. 2023) ("Although the opinions of those district judges are not binding on us, the near unanimity of the rulings is striking, as well as the thorough and persuasive reasoning in the decisions. . . . The district judge in the instant case

---

[1]    We assume, for the purposes of this pleading, that this Court intended to apply a clear or convincing evidence standard as set forth in 18 U.S.C. § 3143.

stands alone in ruling that § 1512(c)(2) cannot reach the conduct of January 6 defendants."). The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question."). Given the broad question presented by Petitioner in *Fischer*, a myriad of possible rulings could occur—including numerous outcomes that would not undermine Adams' conviction on Count One.

Even assuming that a *Fischer*-related appeal raises a "substantial question" for the purposes of appeal, Adams cannot show that a reversal in *Fischer* (and a subsequent reversal in his case) would lead to reversal, an order for a new trial, or a non-jail sentence on both counts, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process, given the sentence imposed on Count Two. Regardless of the implications of *Fischer*, Adams was sentenced to 12 months of incarceration on Count Two, which is not at issue in the *Fischer* appeal. If Adams finishes serving his term of imprisonment on Count Two before *Fischer* is resolved, the appropriate remedy at that time would be to file a renewed motion for bail pending appeal, but not before then.

In this case, Adams' conduct on and after January 6 warrants the 12 months imposed on Count Two, even if his conviction on Count One is reversed. The nature and circumstances of Adams' offenses were of the utmost seriousness. After entering the Capitol building by walking over broken glass from a window that fellow rioters had smashed, Adams pushed past a line of police and moved with other rioters upstairs to enter the Senate Floor, where he recorded on his cellphone for several minutes before being ejected by police. In text messages that Adams sent on January 7, 2021, he reiterated his purpose of occupying the Capitol and insisted that he had

been "peaceful" while inside, despite knowingly joining a riot—and despite his claim that "everyone outside the capital [sic] should have been inside it once we broke through the line."

      The Court reflected on the seriousness of the charged conduct when it stated that entry into the Capitol and Senate floor was "not a mere frolic," but instead, it was "entering the Capitol building with thousands of other people on a day that has a hallowed and special place in our democratic process." Tr. 6/16/23 at 70. The Court also expressed concern regarding how the events of January 6, which included Adams' conduct, affected how other nations view the standing of the United States: "But what that one-time event symbolized and what it meant not only for us here but our image in the world, that is damage that is going to take a long time from which to recover, in my humble view." *Id.*

      Adams repeatedly minimized his conduct and that of his fellow rioters in his comments to the press, both in the days following January 6, and years later, reflecting his lack of appreciation regarding the seriousness of the event. As such, the need for the sentence to provide specific deterrence to Adams also weighs heavily in favor of the imposition of a term of 12 months of incarceration.

      On January 7, 2021, *Insider*, an online media company, published an article[2] entitled "Men who joined in violently storming the US Capitol describe a carnival atmosphere inside", which featured and heavily quoted Adams. *Insider* quoted Adams as having said, "It was a really fun time," and describing the scene as "hilarious." The article also said that Adams stated that he had been spurred on by President Trump's claim that he had been cheated out of victory.

      During the stipulated trial proceeding on January 30, 2023, the Court and Adams further

---

[2]     https://www.insider.com/men-who-broke-into-the-capitol-describe-a-carnival-atmosphere-2021-1

engaged in the following colloquy, during which Adams was under oath:

> THE COURT: And you believe these facts as they were set forth in the document that we talked about, which is the Statement of Facts for Stipulated Trial, that those facts are true and accurate, sir?
>
> THE DEFENDANT: Yes, sir, to the best of my knowledge.
>
> THE COURT: And do you agree, sir, that those facts that you have agreed to support convictions based upon beyond a reasonable doubt of Count 1, charging you with civil -- excuse me, charging you with obstruction of an official proceeding and aiding and abetting the obstruction of an official proceeding? Do you agree with that, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And Count 2, that the facts support a conviction for entering or remaining on a restricted building or grounds, sir. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Tr. 1/30/23 at 39).

Yet two days later, on February 1, 2023, *The State Journal-Register* of Springfield, IL, published an article[3] entitled "'I wouldn't change anything I did' Springfield man convicted in breach of U.S. Capitol." The article quoted Adams as saying, "I wouldn't change anything I did," and "I didn't do anything. I still to this day, even though I had to admit guilt (in the stipulation), don't feel like I did what the charge is." He is also quoted as saying, "I had no criminal intent. I had no malicious intent." These statements to the press minimized his conduct on January 6 and demonstrated disrespect for the Court and the rule of law. Indeed, the Court recognized this lack of acceptance of sentencing, properly questioning whether the defendant truly appreciated the gravity of his crimes. Specifically, the Court stated that Adams' statements "reflect a general attitude of an unwillingness to accept responsibility for the criminal nature of his conduct." Tr. 6/16/23 at 34. The Court continued, appropriately acknowledging that to grant

---

[3]     https://www.sj-r.com/story/news/crime/2023/02/01/thomas-b-adams-jr-was-convicted-for-breaching-u-s-capitol-on-jan-6/69863729007/

Adams points for acceptance of responsibility would "reflect[] a disrespect for the process, it reflects a suggestion that this really is not something anybody should be taking seriously." *Id*. at 36.

Finally, this is not Adams's first foray into the criminal justice system. As documented in the government's sentencing memorandum, ECF 67 at 16, and the presentence report, ECF 64 at 4-5, the defendant has a significant history of arrest and convictions, including residential burglary, retail theft, drug-related offenses, and driving while under the influence of alcohol. His crimes on January 6 occurred in spite of his past attempts at rehabilitation. This is particularly apparent with respect to his conviction for residential burglary, a felony offense, where he was sentenced to four years of incarceration. However, this significant period of incarceration did not deter him from future criminal conduct, as is evidenced by his entry into the Capitol with a mob and with the intent to stop the certification of the Electoral College vote. Thus, the Court's 12-month sentence here was an appropriate exercise of deterrence *and* punishment, set forth by §3553(a). To the extent a defendant were to characterize Count Two as 'just' a misdemeanor, it is nonetheless one of the more serious misdemeanors for criminal conduct on one of the more harmful days in modern American history.

A decision in *Fischer* is expected by June 2024, approximately ten months after Adams' reporting date. Therefore, the appeal will likely be resolved before Adams has finished serving his time on Count Two. Thus, a reversal of his Section 1512(c)(2) count would not result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." Even if the Court believes that it is "likely" that Adams would be resentenced to less than eleven months (the time period from his report date to the expected decision), the remedy is certainly not to release Adams now, or to stay his incarceration entirely.

Instead —and unlike with release based on a reversal, likelihood of trial, or non-jail sentence—the statute directs the Court to order Adams released only once he has served the amount of time he is likely to serve upon resentencing, not immediately. 18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*") (emphasis supplied). Therefore, to release defendant based on the likelihood of a reduced sentence, the Court must calculate that reduced sentence, and defendant must still serve that amount of time before being released pending appeal. *See, e.g.,* May 25, 2023, Order, *United States v. Brock,* D.C. Cir. Case No. 23-3045 (denying motion for release pending appeal in January 6 case where "the district court did not specifically address what appellant's "likely reduced sentence" would be if his conviction under 18 U.S.C. § 1512(c) is reversed. Nor has appellant made that showing…").

### III.    CONCLUSION

Accordingly, Adams' motion for release pending appeal should be DENIED.


Respectfully submitted,


MATTHEW M. GRAVES
United States Attorney


By:     */s/ Carolina Nevin*
        CAROLINA NEVIN
        Assistant United States Attorney
        NY Bar No. 5226121
        U.S. Attorney's Office for the
        District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        202-803-1612
        carolina.nevin@usdoj.gov